IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

IRIS J. D., [1]

    Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 3:20-cv-623-JPG

## MEMORANDUM & ORDER

This is a Social Security Disability appeal.  Before the Court is Plaintiff's brief. (ECF No. 21).  Defendant Commissioner of Social Security responded. (ECF No. 22).  For the reasons below, the Court **AFFIRMS** the Commissioner's denial of benefits and **DIRECTS** the Clerk of Court to **ENTER JUDGMENT**.

## I.    PROCEDURAL & FACTUAL HISTORY

Plaintiff applied for Social Security benefits in 2017, (Tr. of Administrative R. [*hereinafter* "Tr."] at 36, ECF No. 15), alleging an onset date of March 1, 2016.  (*Id.*).  In brief, she contends that she is unable to maintain gainful employment because she has "neuropathy [causing pain and swelling to her feet and legs], spells where [she gets] dizzy and… lightheaded and short of breath [from premature ventricular condition].  (*Id.* at 43–44).  She also suffers from diabetes.

In 2019, Plaintiff appeared before an administrative law judge ("ALJ") with the Social Security Administration and provided testimony to support her application.  (*Id.* at 33).  Her most recent job was at Addus Home Health Care, working as a personal assistant, until 2017.  (*Id.* at 42).  She was a personal assistant where she completed "light housework, [helped] with errands, [and

---

[1] The Court will not use plaintiff's full name in this Memorandum and Order to protect the plaintiff's privacy.  *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

taking patients] to the doctor." (*Id.*). Her occupation also required her to help the patients with personal hygiene. (*Id.*). Regarding the physical aspects of the job, she was standing for most of the work day and some heavy lifting, as she had to help patients move around during the day. (*Id.* at 43).

After considering the record as well as Plaintiff's work history, the ALJ denied Plaintiff's application for Supplemental Social Security Income as the ALJ concluded that she was not disabled. (Tr. at 28). The decision followed the typical "five-step sequential evaluation process" used by the Social Security Administration "for determining whether an individual is disabled." (*Id.* at 3 – 10). *See* 20 C.F.R. § 404.1520(a)(4).

At Step One, the ALJ determined that Plaintiff has "not engaged in substantial gainful activity since March 1, 2016, the amended alleged onset date." (*Id.* at 19).

At Step Two, the ALJ determined that Plaintiff suffers from "diabetes, hypertension, episodes of nonsustained V-tach, and obesity. (*Id.* at 20). Though Plaintiff provided medical evidence that she suffered from hyperlipidemia, cervical radiculitis, shoulder pain, and obstructive sleep apnea, "the medical evidence failed to establish more than slight abnormalities, which could have more than minimal effects on an individual's ability to perform basic work activities. These impairments [require] little to no ongoing treatment other than medication management." (*Id.*). The ALJ also determined that Plaintiff's neuropathy was not a medically determinable impairment by an acceptable medical source and her foot examinations "have been essentially normal." (*Id.*). For these reasons, the ALJ held that her hypertension diagnosis is "a non-medically determinable impairment." (*Id.*).

At Step Three, the ALJ determined that Plaintiff's severe impairments did not, singularly or in combination, meet the requirements of a "Listed Impairment" in the Code of Federal

Regulations. (*Id.* at 20–21).  In other words, the ALJ concluded that Plaintiff is not "presumptively disabled." (*Id.*).

Before moving to Step Four, the ALJ considered Plaintiff's Residual Functional Capacity (RFC), to determine what type of tasks she could accomplish while working.  (*Id.* at 21).  This stage requires "a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment … that can be shown by medically clinical or laboratory diagnostic techniques that could reasonably be expected to produce the claimant's pain and other symptoms."  (*Id.*).  If symptoms are found that could reasonably cause pain or other symptoms to the claimant, the "intensity, persistence, and limiting effects of the claimant's symptoms" must be evaluated to the extent they cause functional limitations.  (*Id.*).  If statements "about the intensity, persistence, functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [claimant] must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." (*Id.*).

Regarding her subjective claims, Plaintiff stated that her diabetes combined with high blood pressure hindered her ability to work, as she stated "she had difficulty squatting, bending, standing, and walking, but notably did not report any problems with lifting, reaching, sitting, or using her hands."  (*Id.*).  The ALJ also noted that she was "able to provide care for her children and her dog, prepare complete meals, clean, do laundry, drive a car, shop in stores, watch her children and grandchildren play sports, play board games, and do puzzles."  (*Id.*).  Plaintiff also claimed that neuropathy "limited her ability to work."  (*Id.* at 22).  Working a sit-down job would be too hard for her because of the pain in her feet and legs caused by neuropathy while her heart

problems, which occurred after the neuropathy, further limited her ability to work a sit-down job because "her heart doctor told her she needed to prop her feet up." (*Id.*).

Based on Plaintiff's testimony and evaluating the record, the ALJ determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*).

Regarding Plaintiff's diabetes and hypertension, the objective medical evidence indicates that she went to Dr. Locey on June 3, 2016 for an examination. The exam determined the state of these claims:

> She was ambulating normally; had normal tone and strength; non contractures, malalignment, tenderness, or bony abnormalities, and normal movement of all extremities; no cyanosis, edema, varicosities, or palpable cord; normal gait and station; deep tendon reflexes 2+ throughout, and her skin and nails were normal. The assessment included diabetes mellitus without complication and essentially hypertension.

(*Id.*).

On March 3, 2017, she again went to Dr. Locey because of heart palpitations where she stated she was not taking insulin because of lack of insurance. (*Id.*). The examination determined that her diabetes mellitus was without complication and she had "intermittent palpitations and she was referred to cardiology." (*Id.*). When Plaintiff went to another doctor for heart palpitations on March 30, 2017, she was "prescribed magnesium, ordered a stress test and a transthoracic echocardiogram, and recommended… [to] minimize her caffeine intake." (*Id.* at 23). She had a follow up appointment with Dr. Locey on September 28, 2017 where she stated her palpitations were bad since she could not afford the medication to treat it, as well as her insulin, but the diagnosis of diabetes without

— 4 —

complications and intermittent palpitations remained the same. (*Id.*). Plaintiff had gone to the Good Samaritan Hospital on September 28, 2017, with complaints of chest pain and lightheadedness caused by her palpitations, but the palpitations ceased when given metoprolol. (*Id.*). A follow up on October 5, 2017 with Dr. Locey determined that the metoprolol gave her immediate relief and a beta blocker issued by a doctor helped as there were "no recent palpitations … or chest pain and … her breathing was stable. (*Id.*). At an appointment with Dr. Locey, Plaintiff stated that "she reported no chest pain, no arm pain on exertion, no shortness of breath when walking of lying down, no palpitations or lightheadedness, and no ankle edema." (*Id.*). Furthermore, a "foot exam showed … strong pedal and tibial pulses." (*Id.*). On November 16, 2017, Plaintiff reported that her blood sugar was better. (*Id.*). Plaintiff "denied chest pain, arm pain, shortness of breath, palpitations, lightheadedness, and ankle edema. She also denied weakness, numbness, tingling, loss of balance, and falls" during an April 30, 2018 visit with Dr. Locey. (*Id.* at 24). During an appointment for hypertension and diabetes on July 31, 2018, it was determined that she had normal tone and motor strength. (*Id.*). A follow up test on her diabetes with Dr. Locey where a foot exam was given noted that nothing had worsened regarding her hypertension. (*Id.*). Plaintiff did report experiencing a sharp shooting pain in her left foot for a few seconds during a September 26, 2018, visit with Dr. Locey but this was because of the size of her shoes. (*Id.*). On a visit to Dr. Locey on February 12, 2019, Plaintiff stated that she had intermittent palpitations but there was no "chest pain, arm pain, shortness of breath, lightheadedness, and no ankle edema." (*Id.*). This visit indicated that her diabetes had not evolved. (*Id.*). During April 3 to April 4, 2019, she was admitted to the good Samaritan Hospital again for exertional shortness of breath and

— 5 —

palpitations.   (*Id.* at 25).   The doctors recommended completing a sleep study and a continuance of her using metoprolol and an extra beta blocker.   (*Id.*).   At a follow up appointment on April 22, 2019, the diagnosis indicated that she had "no acute problems, functional limitations." (*Id.*).   On April 30, 2019, she received a refill for her medications and was told to return in three months to further evaluate her V-Tach and palpitations. (*Id.*).

After considering the record, though the ALJ noted the findings would be consistent with Plaintiff's claims of pain, the record as a whole did not indicate that she would be unable to perform all types of work.   (*Id.*).   Though it was not determined if Plaintiff's obesity caused fatigue or other restrictions to move in the work place, the ALJ noted that obesity can cause contributory effects "on the claimant's other severe impairments." (*Id.*). Based on the record regarding Plaintiff's diabetes, hypertension, and obesity, the ALJ determined "it is reasonable and well supported to limit [Plaintiff] to sedentary work; never climbing ladders, ropes, or scaffolds, occasional climbing ramps and stairs, stooping, kneeling, crouching, and crawling.   (*Id.*).   The ALJ noted that Plaintiff's daily activities, combined with the medical evidence on the record, "are probative evidence in support of the range of sedentary residual functioning capacity… her reported activities or daily living are generally consistent with her performing the range of sedentary work detailed and the determined residual functioning capacity."   (*Id.*).   Though Plaintiff claimed she had to elevate her legs, this "was not noted in her function reports.   There is no indication that any provider has recommended the claimant elevate her legs."   (*Id.* at 26).   Additionally, her limited specialty care and her improvement with medication support that she does not need further limitations.   (*Id.*).   The holding that she is able to perform sedentary work is

supported by the State agency's medical consultants where, based on seven strength factors, of the physical residual functioning capacity, she could perform all of the tasks mentioned previously however; she would be limited to standing and walking two hours of an eight-hour work day.  (*Id.*).

After considering the medical evidence, her work history, and her daily activities, at Step Four, the ALJ determined that given Plaintiff's RFC, she cannot "perform any past relevant work." (*Id.*).

At Step Five, however, the ALJ determined that Plaintiff's severe impairments do not preclude her from *all* work. (*Id.* at 27). Rather, the ALJ concluded that Plaintiff can still take on sedentary positions as a document preparer, a telephone quotation clerk, or an addressor.  (*Id.*).  As a result, the ALJ found that Plaintiff is not disabled. (*Id.* at 28).

Plaintiff appealed to this Court under 42 U.S.C. § 405(g), which authorizes judicial review of the Social Security Administration's denial of benefits.  She argues that the ALJ erred in two ways:  (1) "The ALJ erred by evaluating stale opinions of the state agency consultants that was not supported by substantial evidence or relevant legal standards," (Pl.'s Br. at 10–13) and (2) "The ALJ's conclusion that Plaintiff could work without experiencing any time off task is not supported by substantial evidence or the relevant legal standards,"  (*Id.* at 13–16).

## II.    LAW & ANALYSIS

When an ALJ has ruled on whether a claimant can receive disability benefits, "the factual findings … are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'"  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (quoting 42 U.S.C. § 405(g)).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual

determinations." *Id.* at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison*, 305 U.S. at 229)). "[A court] will reverse the Commissioner's findings only if they are not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). During this process, the judge "[does not] reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [his] own judgement for that of the Commissioner." *Id.*

### A. ALJ's Determination Based on Substantial Evidence and Relevant Legal Standards

When an ALJ makes a decision based on "uncritical acceptance" of a state agency's physician's conclusion, this is considered a reversible error. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). In *Goins*, the ALJ's holding was reversed as "the administrative law judge failed to submit [a new] MRI to medical scrutiny … [which was a] potentially decisive [piece of] medical evidence." *Id.*; citing *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000).

In addition to not considering new evidence, reversal is applicable if an ALJ makes their own medical determinations since "there is always a danger when lawyers and judges attempt to interpret medical reports." *Israel v. Colvin*, 840 F.3d 432, 439 (7th Cir. 2016); citing *Browning v. Colvin*, 766 F.3d 702, 705 (7th Cir. 2014). An example of this is demonstrated in *Blakes ex rel. Wolfe v. Barnhart*, where it was determined the ALJ erred as she "succumbed to the temptation to play doctor when she concluded that a good prognosis for speech and language difficulties was inconsistent with a diagnosis of mental retardation because no expert offered evidence to that effect here." 331 F.3d 565, 570 (7th Cir. 2003).

Though the ALJ must make a determination based on certain aspects and criteria, the claimant must demonstrate certain criteria for disability.  When arguing that disability, "the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 701–02 (7th Cir. 2002).  This is especially true when a claimant is represented by counsel as "[counsel] is presumed to have made her best case before the ALJ." *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017).

If "no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2010).  In addition, if claimant's condition can be alleviated by medication and treatment, the condition will not be considered disabling for a social security case. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *Skinner v. Astrue*, 478 F.3d 836, 845 (7th Cir. 2007).  Mere symptoms of a potentially disabling condition are also not sufficient to prove a disability as "[t]he existence of these conditions alone does not prove that the conditions so functionally limited [claimant] as to rendered her completely disabled during the relevant period." *Collins v. Barnhart*, 114 F. App'x 229, 234 (7th Cir. 2004).

Plaintiff argues that the ALJ erred when making the following determination:

> "Neither state agency-contracted reviewing physician acknowledged the existence of Plaintiff's ventricular tachycardia … which frequently caused Plaintiff palpitation, shortness of breath, fatigue, and dizziness.  The reviewing physicians only assessed medically determinable impairments of essential hypertension, diabetes mellitus, and obesity.  There review makes no mention of Plaintiff's palpitations, shortness of breath, near-syncope or dizziness caused by heart arrhythmia.

(Pl.'s Br. at 10, ECF No. 21).  Furthermore,  because Plaintiff was admitted to a hospital where a Holter Monitor Test indicated that she had multiple episodes of ventricular tachycardia in April of 2019, the agency's June of 2018 opinion lacked substantial evidence.  *Id.* at 10–11.  Though Plaintiff said during the testimony that her palpitations caused lack of breath and dizziness that kept her from functioning, the ALJ had made a

conclusion regarding her RFC that did not include the claimed limitations caused by her heart palpitations. *Id.* at 11.

The Commissioner of Social Security, on the other hand, claims that Plaintiff offered no evidence that greater limitations than those determined by the ALJ were necessary because of her heart palpitations. (Comm'r's Br. at 3, ECF No. 22). The Commissioner bases this argument on the fact that Plaintiff did not offer any opinion from her treating sources, her doctors, indicating that she needed further limitations. *Id.* at 4. Additionally, the Commissioner argues that there is no need for reconsideration because Plaintiff's palpitations were treated with medication. *Id.* Furthermore, the Commissioner contends that the ALJ did consider the timeline of when Plaintiff's palpitations started from 2017 to 2018 and how they were treated, which indicate no need for further limitations than argued by the ALJ. *Id.* at 5–8. While the record may not have considered the 2019 palpitation episodes, the Commissioner argues that since Plaintiff was also given medication that helped her palpitations, her RFC would remain the same, coupled with the fact that, after the 2019 hospital stay, a cardiologist found no functional limitations. *Id.* at 8–9. Finally, though Plaintiff's V-Tach is severe, the Commissioner argues that this alone does not mean she had disabling functional limitations. *Id.* at 9. This Court agrees.

Plaintiff's contention regarding her RFC is that a doctor ordered her to prop her feet up because of the combined hypertension and her heart condition. (Tr. at 45). Nevertheless, there is nothing in her medical record that indicates any doctor told her to do this. In fact, when looking at the record during her 2019 hospital visit for palpitations, though the doctor noted that minimal exertion could be a factor that caused her palpitations, her metoprolol medication helped to alleviate the symptoms. (Ex. 8F/91–92). Though her

2019 hospital visit happened after the first decision was made by the ALJ, there is no error as in *Goins* because the record of her 2019 visit did not offer any new and decisive medical evidence.  Furthermore, the ALJ did not act as a doctor when making a determination since there was no further evidence provided by the 2019 hospital visit, unlike the ALJ in *Blakes ex rel.* who made a decision regarding a claimant's speech abilities as there was no expert evidence offered.  In this case, Plaintiff had the burden to show documentation that she needed greater limitations because of her palpations as held by *Scheck*, but she failed to properly do so as, to reiterate, nothing in the record indicates a doctor told her she had to prop her feet up.  Because these alleged limitations were not found in the medical opinions, there is no error.  *Dudley*, 773 F. App'x at 843.  Additionally, since Plaintiff's heart palpitations were controlled by metoprolol, the condition cannot be considered disabling. *Denton*, 596 F.3d at 425.  Finally, though the doctors speculated during the 2019 visit that minimal exertion may lead to Plaintiff's palpitations, this condition alone does completely label Plaintiff as disabled.  *Collins*, 114 F. App'x at 234.  From evaluating the administrative record, a reasonable mind would be able to accept that Plaintiff's heart palpitations do not require greater limitations, and therefore the ALJ's factual findings can be considered conclusive. *Biestek*, 139 S. Ct. at 1152, 1154.  For these reasons, this Court finds that the ALJ made a correct determination based on substantial evidence and the relevant legal standards.

### B.  ALJ's Consideration of Recorded Evidence

An ALJ's determination has to consider "all of the relevant medical evidence in the record."  *Garfield v. Schweiker*, 732 F.2d 605, 609 (7th Cir. 1984).  Additionally, an ALJ "may not select only the evidence that favors his ultimate conclusion." *Id.*  Additionally, at Step Five of

a social security case, when a vocational expert is questioned, the totality of the claimant's limitations must be apparent. *O'Conner-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Questions to the vocational expert have to "set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994).

Plaintiff further argues that the ALJ erred as when determining her RFC by not considering her dizziness and fatigue created by her V-Tach. (Pl.'s Br. at 13). Though V-Tach is considered a severe impairment under the Code of Federal Regulations and this was considered by the ALJ, the determined RFC did not consider Plaintiff's medical records to include all limitations during Step Five of the Social Security determination process. *Id.* at 13–14. Furthermore, because the ALJ did not consider these limitations when questioning the vocational expert about potential jobs Plaintiff could complete, the ALJ further erred. *Id.* at 15. This Court disagrees.

To reiterate, Plaintiff's contention is that a doctor told her she has to keep her feet propped up to ease her heart palpitations and that would further limit her RFC. (Tr. at 45). Nevertheless, there is nothing in the record that indicates a doctor told her to do this. Furthermore, it is already established that medication helped to alleviate her symptoms caused by V-Tach. (Ex. 8F/91–92). Since there was no evidence in the record to indicate that Plaintiff needs to prop her feet up, the ALJ had considered all of the relevant medical evidence as required by *Garfield.* The ALJ had based his determination on the record by looking at the totality of her conditions, which indicated that she could do sedentary work with limited walking and standing. (Tr. at 27). Because the determination considered all of the relevant evidence, the determination was not done to only support the ALJ's conclusion as ruled in *Garfield.* Since Plaintiff's allegation was not in the record, the vocation expert was given the totality of her limitations that were supported by the

evidence in the record. *O'Conner*, 627 F.3d at 619; *Herron*, 19 F.3d at 327. From these reasons, the Court holds that the ALJ considered all of the relevant medical evidence.

## CONCLUSION

The Court **AFFIRMS** the Commissioner's denial of benefits and **DIRECTS** the Clerk of Court to **ENTER JUDGMENT**.

**IT IS SO ORDERED.**

**Dated:  October 4, 2021**

s/ J. Phil Gilbert_____
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**